UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GERALD M. HAHN and MICHELLE M. HAHN, husband and wife,<br><br>Plaintiffs,<br><br>v.<br><br>STEVEN Z STRASSER and JANE DOE STRASSER, husband and wife, and marital community comprised thereof, STEVEN Z STRASSER, individually and as his sole and separate estate,<br><br>Defendants. | CASE NO. C10-959 RSM<br><br>ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT |

This matter is before the Court for consideration of Plaintiffs' motion for summary judgment. Dkt. # 68. Plaintiffs ask for dismissal of Defendants' defense based on RPC 1.8, and for judgment in their favor on liability under a contract. Defendants have opposed the motion. The Court deems oral argument on this motion unnecessary and shall, for the reasons set forth below, deny the motion.

ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT - 1

## BACKGROUND

This action arises from an alleged letter contract that was drafted in March 1989. Plaintiff Gerald Hahn ("Hahn") asserts that the alleged letter contract represents a business transaction for the sharing of a real estate finder's fee. Hahn, who was an attorney at the time the letter was drafted, alleges that he never represented Defendant Steven Strasser ("Strasser") personally or individually in any legal matters. Rather, Hahn and his law firm, Oseran, Hahn, Kelley, Spring, and Maimon, P.S. ("Oseran, Hahn"), only represented energy-related business entities in which Strasser had interests. Strasser, on the other hand, alleges that he believed Hahn to be his personal attorney during the time in question since he sought legal advice from him on numerous occasions regarding both personal and business issues. He alleges that the letter was drafted only to protect Strasser and Hahn from any tax issues that might arise from the sale of the Aurora Corner property (the "Property").

The events surrounding the relationship between Hahn and Strasser, the sale of the Property, and the effect of the alleged letter contract are in dispute. Hahn alleges that Strasser asked him to assist in the sale of the Property. He contends that Strasser's former real estate partner, Barry Margolese, needed to sell the Property quickly, and Strasser thought Hahn could secure Herb Rosen, a successful local business man, as a possible buyer. Rosen was a difficult man to reach and Hahn knew him personally. Hahn asserts that Strasser told him that if he could arrange a meeting between Strasser, Margolese, and Rosen, and the Property ultimately sold, then any commission or fee paid to Strasser would be split equally with Hahn. Hahn contends that, after numerous calls, he was finally able to set up the meeting, and Herb Rosen, through the partnership H.I.R. III, ultimately bought the Property. Hahn alleges that when Strasser contacted him on or around March 10, 1989 indicating that the Property had sold, Strasser told him that a

1  full commission could not be paid to him at that time, but that Hahn was to receive half of the
2  $50,000 commission at that time and half of 7.5% of any amount received if the Property was to
3  sell or be refinanced in the future in excess of $3,225,000 (a "carried interest"). Hahn contends
4  that since the fee was not paid in full and was contingent on a future sale or refinancing, they
5  agreed that Hahn would write a letter confirming this fee agreement (the alleged letter contract).
6  Hahn drafted the alleged letter contract in dispute and Strasser's signature appears at the bottom.
7  Hahn alleges that in addition to making the introduction to Rosen, Strasser told Hahn that if he
8  provided legal advice to Margolese regarding the sale of the Property, the attorney's fees should
9  not be billed to Margolese, but should be included in the amount paid to Hahn by Strasser, and
10 that the fees would be waived if the transaction did not close. Hahn asserts that he did in fact
11 provide legal advice to Margolese and because of Hahn's firm's policy that all legal fees
12 incurred by any of its attorneys were firm property, Strasser deducted $300 from Hahn's portion
13 and paid it to Oseran, Hahn. Hahn alleges that this arrangement is accurately represented in the
14 alleged letter contract, where it shows that Hahn was ultimately paid $24,700.
15      In 2010, Hahn found out from Stan Rosen (Herb Rosen's son) that the Property sold in
16 2004. Strasser was paid $164,100 as shown in the Chicago Title Insurance Company Seller's
17 Settlement Statement dated April 16, 2004. Hahn was never contacted by Strasser, nor was he
18 ever paid his share of the carried interest. Hahn now claims he is entitled to $82,050 plus pre-
19 judgment interest beginning April 16, 2004.
20      Strasser's story is completely different. According to Strasser, it was he, not Hahn, who
21 contacted Herb Rosen, since Strasser was friends with Herb Rosen's son, Stan. Strasser recalls
22 during that time asking Hahn if he had any potential clients that would be interested in buying
23 the Property. Strasser asserts that Hahn asked him about contacting Herb and Strasser replied
24

ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT - 3

that he had already raised the possibility with Stan Rosen. Strasser alleges he did not ask Hahn to call Herb Rosen. Strasser admits that he told Hahn that he would split his commission with him if he brought Strasser a buyer, but contends that he did not tell Hahn he would be entitled to any carried interest in the Property if it ultimately sold. Strasser alleges that soon after he contacted Stan Rosen about the property, a meeting was ultimately arranged between Strasser, Margolese, and the Rosens. According to him, negotiations were conducted and a deal was made, but Hahn was not a part of it. Strasser asserts that two agreements were made during the deal, one involving Strasser, Stan Rosen, and Margolese, and the other involving Strasser, Stan Rosen, and the H.I.R. III partnership. The former agreement involved a $100,000 commission to be split between Stan Rosen and Strasser. The latter agreement involved a carried interest in the Property on any future sale or refinancing in the amount of 15% (7.5% each). Strasser contends that when he received his $50,000, Hahn asked him to split it with him. Strasser alleges that he ultimately gave the $25,000 to Hahn as a gift, and that his primary reason for doing so was that Hahn was going to buy a boat lift for the boat they owned together. Strasser alleges that he paid $24,700 to Hahn and $300 to Hahn's firm for the legal services provided by Hahn to Margolese.

According to Strasser, a week or so after this occurred, he contacted Hahn with a tax issue. Strasser alleges that he told Hahn he did not want to be taxed on the full $50,000 commission when he only received $25,000 (as a result of his cash gift to Hahn). Strasser states that Hahn thought it would be good to put something in writing to protect them both against any tax issues. Strasser further contends that since he thought Hahn was his attorney, he did not read the alleged letter contract very closely because he trusted Hahn, and that Hahn ultimately put the additional language in the letter regarding his carried interest in the Property in bad faith. In 2004, Strasser and Stan Rosen, through their alleged carried interest agreement, were paid

1 $164,100 out of escrow. Strasser states that it never occurred to him to contact and share any of
2 the carried interest proceeds with Hahn since that was never their agreement.

3 On March 31, 2010, Plaintiffs filed a complaint in King County Superior Court asserting
4 breach of contract. The complaint was removed to this Court under 28 U.S.C. §1441. Defendants
5 denied all allegations and asserted that the Plaintiffs' claim was barred by the applicable statute
6 of limitations. Both sides filed motions for summary judgment. This Court applied the three-year
7 statute of limitations set forth under RCW 4.16.080 and held that Plaintiffs' claim was time-
8 barred. The Plaintiffs appealed to the U.S. Court of Appeals for the Ninth Circuit, which held
9 that the letter agreement is subject to the six-year statute of limitations for written contracts. The
10 matter was remanded to this Court for further proceeding. Now before this Court is Plaintiffs'
11 motion for summary judgment seeking a determination by this Court that the only issue
12 remaining in this case is Defendants' RPC 1.8 defense, which should be dismissed. Plaintiffs
13 contend that they are entitled to money judgment under the Law of the Case doctrine and that
14 they are entitled to money judgment.

15 **DISCUSSION**

16 I. <u>Summary Judgment Standard</u>

17 Summary judgment is appropriate when, viewing the facts in the light most favorable to
18 the nonmoving party, there is no genuine dispute as to any material fact that would preclude the
19 entry of judgment as a matter of law. *L.A. Printex Indus., Inc. v. Aeropostale, Inc*., 676 F. 3d 841,
20 846 (9th Cir.2012). The party seeking summary dismissal of the case "bears the initial
21 responsibility of informing the district court of the basis for its motion" (*Celotex Corp. v. Catrett*,
22 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)) and identifying those portions of the
23 materials in the record that show the absence of a genuine issue of material fact (Fed.R.Civ.P.
24

56(c)(1)). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to identify specific factual disputes that must be resolved at trial. *Hexcel Corp. v. Ineos Polymers, Inc.,* 681 F.3d 1055, 1059 (9th Cir.2012). The mere existence of a scintilla of evidence in support of the non-moving party's position will not preclude summary judgment, however, unless a reasonable jury viewing the evidence in the light most favorable to the nonmoving party could return a verdict in its favor. *U.S. v. Arango*, 670 F.3d 988, 992 (9th Cir. 2012).

II. Analysis

Plaintiffs argue that the "Law of the Case Doctrine" limits any remaining issues only to Defendants' RPC 1.8 defense. Defendants argue that the Ninth Circuit only concluded that the six-year statute of limitations period applies, and that it did not rule on the merits of Plaintiffs' breach of contract claim.

A. The Law of Case Doctrine

The law of the case doctrine requires a district court to follow the appellate court's resolution of an issue of law in all subsequent proceedings in the same case. *United States ex rel. Lujan v. Hughes Aircraft Co*., 243 F.3d 1181, 1186 (9th Cir. 2001). It applies to a court's explicit decisions, as well as those issues decided by necessary implication. *Hegler v. Borg*, 50 F.3d 1472, 1476 (9th Cir. 1995). However, it does not extend to issues an appellate court did not address. *Id.* A district court on remand retains discretion to consider issues that were not expressly or implicitly decided by the appellate court. *United States v. Cote*, 51 F.3d 178, 182 (9th Cir. 1995).

Hahn argues that since the Ninth Circuit Court of Appeals held that the 1989 letter sufficiently identified the subject matter, parties, and the consideration for the unilateral contract,

the elements of a written contract are present, and therefore any issue regarding the contract itself has been decided by the appellate court.

Strasser argues that the law of the case doctrine only applies to issues that have been denied explicitly or by necessary implication, not to issues an appellate court did not address. Specifically, Strasser argues that the Ninth Circuit never reached the substantive merits of the case, but rather only considered the alleged contract in light of the statute of limitations issue.

On appeal, the Ninth Circuit considered the statute of limitations issue and held that the "written letter agreement sufficiently describes the essential elements and should be subject to the six-year statute of limitations for written contracts." The Ninth Circuit's decision was made solely within the context of the statute of limitations question before it. It did not rule on the terms or enforceability of the alleged contract. It was only considering whether the alleged letter contract was an oral contract subject to a three-year statute of limitations or written contract subject to a six-year statute of limitations. The issue was not enforceability, but ultimately whether the breach of contract claim could even be brought, and therefore the law of the case doctrine does not apply. The question of terms and enforceability of the letter contract remains at issue, and shall proceed to trial.

B. Dispute as to Existence of Attorney-Client Relationship

Hahn and Strasser disagree as to whether an attorney-client relationship existed between them in 1989 at the time the alleged letter contract was formed.

Hahn argues that the "subject matter of the letter agreement plainly does not involve a request for, or the performance of, legal/attorney services by Hahn." Dkt. # 68, Pg. 8. He further argues that he "prepared no documents, gave no advice to any party except the Seller in the transaction..." Dkt. # 68, Pg. 9. Hahn cites to his declaration filed on October 18, 2012, where he

states that "I did not ever represent Steve Strasser personally or individually." Dkt. # 70, Pg 3. Furthermore, he states that "[i]n connection with the contract dated March 20, 1989, I was not Strasser's attorney. Strasser did not ask for legal advice, nor did I volunteer any. I did not set up a file, did not send a bill, and Strasser did not ask me for any advice. He only told me he would pay a finder's fee." Dkt. # 70, Pg 3-4. Hahn also cites to a declaration submitted by Robert Aronson, who was a professor of law at the University of Washington and an expert in the area of professional responsibility. Aronson reviewed Hahn's version of the facts and concluded that Hahn "did not represent Strasser individually in the transaction or in other matters at the time." Dkt. # 71, Pg. 18.

Strasser, on the other hand, states in his declaration that "Hahn was also my personal attorney" in the late 1980's and that Strasser "sought legal advice from [Hahn] on numerous occasions regarding both personal and business issues." Dkt. # 73, Pg. 1. Strasser specifically points to, among other things, his declaration where he states: "I contacted Hahn, as my personal lawyer, with a personal tax issue…Hahn prepared a writing ("the tax letter") and sent it to me on March 20, 1989…I asked Hahn to write this letter because he was my lawyer and understood my personal tax concerns." Dkt. # 73, Pg. 3. Strasser also refers this Court to Exhibit C of Hahn's declaration (which is a copy of the business records of Oseran, Hahn law firm between 1987 and 1997) and argues that because one of the files opened for Shupe Energy is listed as "Steve Strasser/Gerald Shupe adv. McGuire," this Court can infer that Hahn's law firm represented Strasser personally in a Shupe Energy matter in 1989. Dkt. # 70, Pg. 13.  Finally, Strasser argues that the alleged letter contract was written by Hahn on Hahn's law firm letterhead, and that this is further evidence that Hahn was acting as Strasser's attorney.

1    When ruling on a summary judgment motion, the Court must make all inferences in favor
2 of the non-moving party. *Matsushita Elec. Industrial Co. v. Zenith Radio corp.*, 475 U.S. 574,
3 587, 106 S. Ct. 1348, 89 L.Ed. 2d. 538. Hahn argues that Strasser cannot rely on only two
4 conclusory declarations lacking detailed facts, subjective beliefs, and his feelings and opinions to
5 deny a summary judgment claim. It is true that a "conclusory, self serving affidavit lacking
6 detailed facts and any supporting evidence is insufficient to create a genuine issue of material
7 fact." *F.T.C. v. Publishing Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997). However,
8 a party asserting that a fact cannot be genuinely disputed can support its assertions by
9 declaration, Rule 56(c)(1)(a), provided it is made with personal knowledge, the declarant is
10 competent to testify, and the facts would be admissible in evidence. 56(c)(4). Strasser does cite
11 to some materials in the record, including his own declaration that offers some facts, which, if
12 viewed in the light most favorable to Strasser, could lead a reasonable juror to find that an
13 attorney-client relationship did in fact exist.
14    Strasser has pointed to a genuine factual dispute which must be decided by the jury.
15 Summary judgment shall accordingly be DENIED.
16    The Court has determined, as set forth above, that there is a material factual dispute as to
17 whether Hahn and Strasser had an attorney-client relationship, and whether that relationship
18 included the deal surrounding the alleged letter contract. The Court therefore does not reach the
19 issue of whether the requirements of RPC 1.8 were met.

## CONCLUSION

21    The Court, having considered Plaintiffs' motion, Defendants' response thereto, Plaintiffs'
22 reply, and the remainder of the record, hereby finds and ORDERS:

(1) Plaintiffs' motion for summary judgment and dismissal of Defendants' RPC 1.8 defense (Dkt. # 68) is DENIED. Plaintiff's request that this Court make a determination that the "Law of the Case" doctrine limits any remaining issues in this case to the Defendant's RPC 1.8 defense is also DENIED.

(2) The Clerk of the Court is directed to forward a copy of this Order to all counsel of record.

DATED this 1st day of March 2013.

                                                *[signature]*

                                                RICARDO S. MARTINEZ
                                                UNITED STATES DISTRICT JUDGE

ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT - 11